IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARVONNE JONES,<br><br>                Petitioner,<br><br>      vs.<br><br>DANIEL E. CUEVA, Acting Warden,<br>California Medical Facility,[1]<br><br>                Respondent. | No. 2:17-cv-02159-JKS<br><br>MEMORANDUM DECISION |

       Jarvonne Jones, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Jones is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California Medical facility. Respondent has answered, and Jones has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

       Jones was charged by amended information with seven crimes committed in connection with a domestic disturbance that allegedly occurred over a two-day period. On direct appeal of his conviction, the California Court of Appeals recounted the following facts underlying the charges against Jones and the evidence presented at trial:

> ***[Jones's] Relationship with Tiffany Lew***
>        Tiffany Lew (Tiffany) lived with her three children, ages seven, five, and two. In January 2014, she met [Jones] through Facebook. They dated for about three months. The relationship changed and [Jones] became "physical" in late April. They got into an argument, and [Jones] grabbed her and smashed her phone. He threw rocks at her windshield, which he later paid to fix.
>        They broke up after this incident and Tiffany became sexually involved with someone else. She told [Jones] this, and he was angry and called her names. They kept

---

[1]       Daniel E. Cueva, Acting Warden, California Medical Facility, is substituted for Kimberly A. Serbel, former Warden, Deuel Vocational Institution. FED. R. CIV. P. 25(c).

in contact. One night when they were together, he would not let her leave and spit in her face. Tiffany had no contact with [Jones] from July until September, except through text messages.

*Events of September 11*

On September 11, 2014, Tiffany was at home, recovering from surgery. Her friend Veshay Bell was visiting her. [Jones] sent her several text messages about trying to fix their relationship. Tiffany was sympathetic at first, but then told [Jones] she had moved on and was with someone else. [Jones] called and wanted to talk to her. She told him not to come over and hung up on him. [Jones] texted her that he was coming over.

Melanie Lew (Melanie, Tiffany's mother) brought Tiffany's two older children home from school about 2:45 p.m. [Jones] came into the house right behind Melanie; she said she could not stop him. [Jones] told Tiffany she was not going to disrespect him like that. He then searched for something in a drawer of the night stand. Tiffany thought he was looking for a letter she had written saying that if something happened to her, [Jones] did it. Tiffany had threatened him with the letter in the past. [Jones] smashed the drawer and threw it across the room.[FN2]

> FN2.  A photograph of the drawer shows it several feet away from the dresser but intact.

Melanie said she was going to call the police. [Jones] responded, "bitch, you're going to do what?" He pulled a gun out of his waistband and held it at his side as he advanced toward Melanie and knocked the phone out of her hand. While [Jones] was focused on Melanie, Tiffany took her children out to the garage and into her car. Melanie was behind her. Tiffany asked Melanie for the car keys, and Melanie went back inside to find them. Melanie saw [Jones] rip the television set off the living room wall and throw it.

Melanie could not find the keys, which had been knocked away by [Jones] when he went after the phone in her hand. Bell drove the children away in her own car. [Jones] came into the garage and then used a child's scooter to knock out the windows in Tiffany's car. He left and Tiffany and Melanie both called the police.

After the incident, [Jones] sent Tiffany a number of text messages, telling her not to involve the police and threatening her with physical harm. The next day, he sent text messages threatening Tiffany's children, noting that he knew where they went to school and asking, "Do you think about your kids before you do the shit you do?"

*The Arrest and Search*

On September 12, 2014, the police went to [Jones's] apartment. An officer knocked on his door and announced the police presence. [Jones] did not respond, but the officer saw [Jones] peek out. The police waited 30 minutes. Finally, [Jones] called a friend and then came out. The police searched the apartment and found a gun in the drawer beneath the oven.

2

        In a phone call from jail, [Jones] admitted the police found his "hammer," which is slang for gun. He said he had tried to hide it in the "bottom part" of the stove. [Jones] knew he was going to "get time" because they found the gun, he had a prior with a gun, and he was on parole.

### *[Jones's] Prior Acts of Domestic Violence*

        The People moved to admit evidence of [Jones's] prior acts of domestic violence under Evidence Code section 1109.[2] Ebony Menefee testified she dated [Jones] in 2011. The relationship was good at first, but then [Jones] broke her car window and got into an argument with her mother. She could not recall whether he hit her or her mother.

        Claudia Williams testified that she was still afraid due to what [Jones] had done to her in the past. She met him on Facebook and after three months the relationship became violent. [Jones] choked her while they were in the car. They went to a hotel where he abused her. When she tried to call her stepfather, [Jones] threatened that if she told anyone where she was, they would find her dead in the motel room. She felt threatened and could not leave. After [Jones] took her home the next day, he texted her threats to kill her.

### *Stipulations*

        The parties stipulated that the damage to Tiffany's home and car was more than $400 and less than $10,000. They further stipulated [Jones] could not lawfully possess a gun at the time of the crimes.

*People v. Jones*, No. C080003, 2016 WL 6124507, at *1-2 (Cal. Ct. App. Oct. 20, 2016).

At the conclusion of trial, the jury found Jones guilty of two counts of unlawful possession of a firearm, felony vandalism, exhibiting a firearm, misdemeanor resisting arrest, and two counts of dissuading a witness with force or threat. The jury also found true the allegation that Jones personally used a firearm as to one of those counts. The trial court subsequently sentenced Jones to an aggregate term of 18 years and four months' imprisonment.

---

    [2] That section authorizes "evidence of the defendant's commission of other domestic violence" . . . "in a criminal action in which the defendant is accused of an offense involving domestic violence." CAL. EVID. CODE § 1109(a)(1).

3

Through counsel, Jones appealed his conviction, arguing that: 1) the trial court erred in hearing and then granting a motion to reconsider its ruling granting Jones' *Marsden*[3] motion; 2) insufficient evidence was presented at trial to sustain his dissuading a witness conviction and the personal use of a firearm allegation; and 3) the admission of his nickname was prejudicial error. The Court of Appeal unanimously affirmed the judgment against Jones in a reasoned, unpublished opinion issued on October 20, 2016. *Jones*, 2016 WL 6124507, at *9. Jones petitioned for review in the California Supreme Court, raising only his claims relating to the *Marsden* motion and the legal sufficiency of the evidence as to the firearm allegation. The California Supreme Court denied review without comment on January 11, 2017. His conviction became final on direct review 90 days later, when his time to file a petition for certiorari in the U.S. Supreme Court expired on April 11, 2017. *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).

Jones timely filed an undated Petition for a Writ of Habeas Corpus in this Court in September 2017. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Jones argues, as he did before the California state courts on direct appeal, that: 1) the trial court erred in granting relieved counsel's motion for reconsideration of his *Marsden* motion; 2) the evidence presented at trial was legally insufficient to sustain his convictions for witness intimidation; 3) the evidence presented at trial was legally

---

[3] *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).

insufficient to establish his personal use of a firearm; and 4) the trial court erred in admitting evidence of Jones's nickname.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S.

5

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1.    *Reconsideration/Denial of Marsden Motion*

Jones first argues that the trial court when it granted former counsel's motion for reconsideration of Jones's *Marsden* motion and subsequently denied the motion after having relieved counsel of his appointment. In considering this claim on direct appeal, the Court of Appeal laid out the following facts underlying this claim:

> [Jones] was represented by the public defender's office. Before trial, [Jones] brought a *Marsden* motion, claiming a conflict of interest with his counsel, Sandra Di Giulio. [Jones] complained his attorney would not listen to him, but instead walked away. Counsel explained [Jones] wanted to talk only about his bail hold and that was not

6

what was being addressed in court that day.  When [Jones] continued to want to talk about the hold, counsel walked away.  The court denied the motion.

At the time of trial, [Jones] was represented by John Buchholz from the public defender's office.  [Jones] again moved for a *Marsden* hearing.  [Jones] generally claimed there was a lack of communication and his attorney thought he was guilty, but he set forth no specifics.  Counsel explained that, given the strong evidence against [Jones], he had explained to him that a conviction on the intimidation charge and gun use enhancement would carry a potential sentence of 14 years.  [Jones] interpreted that advisement to mean that Buchholz had no confidence in the case.  The trial court found no breakdown in the relationship and denied the motion.

[Jones] then stated he wanted to represent himself.  He told the court that he would need time to prepare, two weeks "[f]or starters."  The People strenuously objected to a continuance.  The trial court reminded [Jones] that he had known for three weeks he wanted to represent himself and had failed to return to court when another judge was hearing his earlier motion for self-representation.  The court denied the motion.[FN3]

> FN3.   On appeal, [Jones] does not challenge the denial of his request to represent himself, nor does he challenge the denial of his first two *Marsden* motions. As we discuss post, he challenges only trial court's reversing its later ruling granting his (third) *Marsden* motion and reinstating Buchholz as [Jones's] attorney.

After the jury returned its verdicts, [Jones] brought a third *Marsden* motion.  [Jones] claimed Buchholz had inadequately represented him throughout the trial.  He complained that Buchholz had not impeached witnesses with their inconsistent statements and had failed to investigate.  Buchholz explained that he had told [Jones] the case was "terrible."  He claimed there was no breakdown in the relationship, but instead that [Jones] did not like hearing that his case was terrible and did not want to listen to sound advice.  The trial court observed that it appeared [Jones] thought he knew better than his lawyer at every tactical fork in the trial.  Finding that there was no improper representation, but given [Jones's] pervasive disagreement with counsel on every piece of evidence, the court found there was a breakdown in the relationship.  The court found no errors by counsel, but granted the *Marsden* motion.

One week later, Buchholz filed a motion to (reconsider the ruling and) deny the *Marsden* motion.  He set forth the law that neither a disagreement in trial tactics nor that [Jones] did not relate well to counsel was a sufficient basis to grant the motion.  The court could relieve counsel only if it found "such an irreconcilable conflict that ineffective representation would likely result if the relationship continued."  Buchholz claimed [Jones] had not complained of such a conflict and the record did not show one.

At the next court date, the trial court indicated it had considered the correctness of its ruling on the *Marsden* motion under its inherent authority to correct rulings, and believed the previous ruling was incorrect.  [Jones] told the court there was a communication breakdown between him and Buchholz, and each had a bias against the other.  When Buchholz brought him the probation report, he called [Jones] a "Mother

7

Fucker" (MF), and then apologized. Buchholz admitted he used the term, but claimed it was used in a colloquial setting, like "[MF], are you crazy?" Buchholz asserted there was no breakdown in communication; [Jones] just did not want to listen to advice. He argued their disagreement was not the basis for a *Marsden* motion because there was no breakdown in the relationship such that ineffective representation was likely to occur. The trial court reversed its earlier ruling and denied the *Marsden* motion, reinstating Buchholz as [Jones's] attorney.

After the court's ruling, [Jones] began ranting and cursing. The court cautioned him about his language. He called his attorney a "fag," and repeated the epithet MF several times. He claimed the court had disrespected him by its ruling. [Jones] wanted to be excused. "I don't want to be sitting next to this prick right here letting him represent me." The court advised [Jones] of his appellate rights, with [Jones] constantly interrupting. [Jones] was then escorted out of the courtroom.

At sentencing, Buchholz argued count one should be stayed pursuant to section 654.[4] He further argued for a four-year midterm on the firearm enhancement. The court accepted the first argument, but imposed the 10–year upper term on the firearm enhancement and sentenced defendant to 18 years four months in prison.

*Jones*, 2016 WL 6124507, at *2-4.

The Sixth Amendment right to counsel guarantees to an accused the concomitant rights to conflict-free representation and the effective assistance of counsel. *See Wheat v. United States*, 486 U.S. 153, 156 (1988); *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The denial of a *Marsden* motion may implicate the Sixth Amendment right to counsel.[5] *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc); *Bland v. Cal. Dep't of Corrs.*, 20 F.3d 1469, 1475-76 (9th Cir. 1994), overruled on other grounds in *Schell*, 218 F.3d at 1025-26; *Hudson v. Rushen*,

---

[4] Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." CAL. PENAL CODE § 654.

[5] As the Court of Appeal noted, Jones did not appeal and does not appear to challenge in this Court the denial of his motion to represent himself. Likewise, Jones did not raise on appeal and does not raise in the instant Petition any claim that the trial court erred in denying his first two *Marsden* motions. Accordingly, this Court will not consider whether the trial court should have allowed Jones to represent himself pursuant to *Faretta v. California*, 422 U.S. 806 (1975) or assess the trial court's denial of his first two *Marsden* motions.

686 F.2d 826, 828-29 (9th Cir. 1982). When a criminal defendant requests a substitution of counsel, the trial court is constitutionally required to inquire about the defendant's reasons for wanting a new attorney. *Schell*, 218 F.3d at 1025 ("[I]t is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward."). The Supreme Court has, however, "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). The ultimate question then is not whether the state trial court abused its discretion in denying Jones's *Marsden* motion upon reconsideration but whether that ultimate denial "actually violated [Jones's] constitutional rights in that the conflict between [Jones] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026. The Ninth Circuit has explained:

> The test for determining whether the trial judge should have granted a substitution motion is the same as the test for determining whether an irreconcilable conflict existed. The court must consider: (1) the extent of the conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel.

*Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (citations omitted).

Here, the record reflects that Jones was given an opportunity to address his concerns with counsel to the court, and there is no indication that he was in any way prevented from sharing his concerns with the court. Furthermore, Jones fails to demonstrate that he had a valid basis for demanding new counsel. *See United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (finding inquiry adequate where defendant "was given the opportunity to express whatever

9

concerns he had, and the court inquired as to [defense counsel's] commitment to the case and his perspective on the degree of communication"). With respect to the nature and extent of the alleged conflict with counsel, the substance of Jones's complaints appear to amount to a disagreement over defense trial tactics and complaints that are considered and rejected with respect to this claim. As the Court of Appeal reasonably concluded:

> Here, [Jones's] disagreements with Buchholz were over trial tactics, the alleged failure to subpoena witnesses, impeach witnesses, and investigate. [Jones] claimed a lack of communication, but Buchholz explained the problem was that [Jones] did not want to listen to him, largely because he did not like his advice. The court was entitled to, and did, accept counsel's explanation.

*Jones*, 2016 WL 6124507, at *5 (citation omitted).

Like California law, it is well-established under Federal law that tactical matters are within the purview of trial counsel's discretion and disagreements over them do not necessitate substitution of counsel. *United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003) (holding that dispute over trial tactics "is not a sufficient conflict to warrant substitution of counsel"). Although Buchholz's use of an epithet against Jones is certainly concerning, heated words alone do not require substitution either. *People v. Taylor*, 229 P.3d 12, 39 (Cal. 2010). Because Jones fails to demonstrate that the facts enumerated by the Ninth Circuit in *Daniels* weighed in favor of granting his substitution motion, Jones cannot show that he was denied his Sixth Amendment right to counsel.

Moreover, it is important to note that the challenged *Marsden* denial was made after the verdict had been received. Thus, the only aspect remaining of Jones's case was sentencing. Jones did not identify on direct appeal, and does not identify here, any facts from which a reasonable factfinder could conclude that the result of sentencing would have been different with

10

another attorney. Because Jones cannot show such prejudice, any claim of ineffective assistance also must fail. *See Strickland*, 466 U.S. at 687. Jones is therefore not entitled to relief on this claim in any event.

Grounds 2, 3. *Insufficiency of the Evidence*

Jones next contends that the prosecution presented legally insufficient evidence to sustain his convictions for dissuading a witness and the personal use of a firearm enhancement. As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

11

forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos*, 132 S. Ct. at 3-4. Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

        A.     *Witness intimidation*

Jones claims that there was insufficient evidence to support his convictions on two counts of dissuading a witness. The record reflects that Count IV was based on his knocking the phone from Melanie's hand while displaying a gun, and Count V was based on threatening text messages he sent Tiffany after he left the house.

As an initial matter, Respondent correctly argues that Jones's insufficiency of the evidence claims are unexhausted as to his witness intimidation convictions. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To have properly exhausted his state court remedies, Jones must have presented both the legal arguments and the factual basis to the highest state court. *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003). As Respondent notes, Jones failed to exhaust this insufficiency of the evidence claim because he failed to raise it in his petition for review in the California Supreme Court. He thus did not raise it before the state's highest court. Consequently, this insufficiency of the evidence claim is unexhausted and is subject to dismissal on that basis.

In any event, even if Jones had properly exhausted the claim, he would not be entitled to relief on it. Jones argues as he did on direct appeal, that there was insufficient evidence to support his dissuading of a witness convictions because he had not committed any crime when he knocked the phone from Melanie's hand. As the Court of Appeal explained:

> To prove a violation of dissuading a witness under [California Penal Code] section 136.1, subdivision (b)(1), "the prosecution must show (1) the defendant has

13

> attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of his or her victimization to any peace officer or other designated officials." (*People v. Upsher* (2007) 155 Cal. App. 4th 1311, 1320.) Thus, section 136.1 requires a crime be already committed.

*Jones*, 2016 WL 6124507, at *6.

But the Court of Appeal rejected Jones's contention that no crime had already been committed when he knocked the phone from Melanie's hand. Specifically, the Court of Appeal concluded that Jones had committed the crime of trespass under California Penal Code § 602.5, which makes it a crime to enter a dwelling without consent of the owner while a resident is present. *Id.* Federal courts are "bound by a state court's construction of its own penal statutes," *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993), and this Court therefore must defer to the California courts' application of its law unless that interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review of a constitutional violation," *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989); *see also Bradshaw*, 546 U.S. at 76 (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Jones fails to show that the appellate court's interpretation is untenable as there as ample evidence to support its conclusion:

> It is undisputed that [Jones] entered and remained in the house while Tiffany was there. There was substantial evidence that [Jones] did not have consent of the owner. Bell testified before [Jones] arrived, [Jones] and Tiffany spoke by phone. [Jones] said he was coming over, Tiffany said, "don't." Melanie told Tiffany she could not stop [Jones] from coming in.

*Jones*, 2016 WL 6124507, at *6.

Accordingly, Jones's legal insufficiency claim fails as to his dissuading a witness convictions.

14

B.      *Personal use of a firearm*

Jones additionally avers that there was insufficient evidence to support the personal use of a firearm enhancement. According to Jones, because he held the gun at his side, rather than pointing it at Melanie or threatening to shoot her, his conduct constituted only a passive display of the firearm and was insufficient to constitute personal use of a firearm under California Penal Code § 12022.5. But again, this Court is bound by the California Court of Appeal's interpretation of that state law. Consequently Jones is not entitled to relief on this ground either.

Ground 4.      *Evidentiary Error*

Finally, Jones claims that the trial court prejudicially erred in admitting evidence of his nickname "Hyphy" because the jury would infer that the nickname was gang related.

The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Indeed, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules

15

of evidence, provided that none of them infringes a guarantee in the Federal Constitution." *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

"The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67). Where a due process violation is alleged stemming from an evidentiary challenge, federal courts review such alleged due process violations for whether admission of certain evidence "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. A habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005). The "[a]dmission of evidence violates due process only if there are *no* permissible inferences the jury may draw from it." *Boyde*, 404 F.3d at 1172 (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)) (internal quotation marks omitted; emphasis in original); *see also Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that the Supreme Court has not made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ of habeas corpus).

Respondent first correctly argues that this claim is unexhausted. Although Jones raised this claim on direct appeal before the Court of Appeal, the claim was not raised in Jones's counseled petition for review in the California Supreme Court. Consequently, this claim is unexhausted for the reasons discussed with respect to Ground 2, *supra*.

In any event, Jones fails to satisfy the high standards enumerated above for establishing a due process violation based on evidentiary error. As an initial matter, Jones did not provide any

16

evidence before the California courts, and does not provide here, any evidence that would suggest that the admission alone of evidence of Jones's nickname "Hyphy" would lead the jury to infer that Jones was a gang member. He therefore fails to show that he was even prejudiced by such admission.

Moreover, the Court concurs with the trial court and the Court of Appeal that Tiffany's testimony as to Jones's nickname "was relevant to identify [Jones] as the person placing the call from jail." *Jones*, 2016 WL 6124507, at *8. Since the evidence of his nickname was relevant to an issue in the case, its admission cannot be said to have violated due process. *See Estelle*, 502 U.S. at 70; *Jammal*, 926 F.2d at 920 ("Only if there are no permissible inferences the jury can draw from the evidence can its admission violate due process.").

In any event, even if it could be found that evidence of Jones's nickname was inflammatory and unduly prejudicial for suggesting gang involvement, as Jones contends, habeas relief still would not be warranted under the AEDPA because, again, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *See Holley*, 568 F.3d at 1101. Absent such "clearly established Federal law," the Court is unable to find or conclude that the state courts' rejection of Jones's evidentiary error claim was either contrary to or involved an unreasonable application of clearly established Supreme Court law. *See id.*; *see also Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."). Accordingly, Jones is not entitled to relief on this ground.

V. CONCLUSION AND ORDER

Jones is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 30, 2020.

                                                /s/James K. Singleton, Jr.
                                            JAMES K. SINGLETON, JR.
                                            Senior United States District Judge